The State of Ohio, Appellee, *v.* Jones, Appellant.

[Cite as State v. Jones (1977), 53 Ohio App. 2d 308.]

(No. 8434—Decided July 6, 1977.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Carl M. Layman,* for appellee.

*Mr. Lawrence B. Comanor,* for appellant.

Hunsicker, J. Isaac Jones III was indicted by the Grand Jury of Summit County on one count of kidnapping and one count of rape. He was tried to a jury who returned a verdict of not guilty of kidnapping and not guilty of rape, but guilty of the lesser included offense of corruption of a minor. He appeals from the judgment of guilty.

Counsel for Jones files only one assignment of error which is as follows:

"It is violative of defendant's Fifth and Fourteenth Amendment rights to due process, Fifth Amendment privilege against self-incrimination, Sixth Amendment right to counsel, and attorney-client privilege to allow his post-arrest silence to be used to impeach an explanation subsequently offered at trial; especially when said impeachment included the further contention that defendant's silence extended to his attorney."

On November 8, 1976, a 13 year old, seventh grade school girl (hereinafter referred to as the victim) was on

her way alone to school about 7:30 in the morning when she was accosted by Isaac Jones III, a 22 year old man, herein called Jones. Through fear of physical harm from a knife Jones showed the victim, she went with him to his room where he told her to undress. She complied with his request and lay on a blanket. Jones undressed and got on the bed with the victim where he tried to have sexual relations with her. He never completed the act because she complained of pain as he attempted the act. Twice, he left the apartment to a make phone call; once, a fellow worker came to the door of the apartment and talked with Jones. The victim made no effort to call for help or to leave the apartment the two times Jones left to make a phone call. There were windows facing the street on which the apartment was located.

Jones, after receiving his *Miranda* warnings, said that when he was first approached by the police he did not have the girl in his apartment, but that two other boys had taken a girl to his apartment. He said he had given these boys permission to go to his apartment. At the trial, he told a different story which he said was the truth. He was then asked if that was the first time he had told any police officer or public officer the story told on the witness stand. It is the questioning regarding the conflict of stories that counsel for Jones now says is an infringement upon his constitutional rights.

Jones did not remain silent when approached by the police but told a story that he had no young girl in his apartment but that two young friends, with his permission, took a girl to his apartment. Jones was not forced to give this statement. He could have remained silent or stopped his explanation of a girl's presence in his apartment by saying that he knew nothing about the matter. He chose to talk and when placed under oath told a different story.

On cross-examination, Jones said he told the examining officer that after the *Miranda* warnings he voluntarily talked to the arresting officers at which time he told the story of the "two dudes" in his apartment. He also spoke

of other matters describing his apartment.

In *Doyle* v. *Ohio* (1976), 426 U. S. 610, there was a post-arrest silence on the part of Doyle and his co-defendant, Richard Wood. Later a story that the defendants were framed was told to the jury and, for purposes of impeachment, the prosecution cross-examined Doyle and Wood about their failure to tell the frame story when arrested. The instant case has no relation to the situation in Doyle. A refusal to talk in such a situation comports with the *Miranda* rule.

Justice Powell in the opinion of the court said, at page 611:

"The question in these consolidated cases is whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest. We conclude that use of the defendant's post-arrest *silence* in this manner violates due process, and therefore reverse the conviction of both petitioners." (Emphasis ours.)

See, also, *United States* v. *Hale* (1975), 422 U. S. 171.

In a subsequently heard case, *United States* v. *Harp* (C. A. 5, 1976), 536 F. 2d 601, the court concluded, at page 603:

"* * * [I]t is fundamentally unfair to allow an arrested person's silence following *Miranda* warnings to be used to impeach an explanation subsequently offered at trial."

The key word in these federal cases is "silence." We do not have that in this case.

*Judgment affirmed.*

BELL, P. J., and VICTOR, J., concur.

HUNSICKER, J., retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution.